## Keller, Appellant, *v.* Wilkinsburg Penn Joint Water Authority.

Argued March 25, 1958.  Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Anthony J. Martin,* for appellant.

*Kim Darragh,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, April 21, 1958:

Plaintiff appeals from the refusal of the court below to grant a new trial, following a verdict for the defendant.[1]  His only contention is that the verdict was contrary to law and against the weight of the evidence.

On Sunday, October 11, 1953, a clear, dry evening, the plaintiff, his son and his brother, were travelling eastward from Pitcairn to Trafford, on Broadway Extension in the borough of Pitcairn, Allegheny County. Between 6:30 and 7:30 P.M., the plaintiff-operator testified, he was temporarily blinded by the headlights of an approaching vehicle.  Soon thereafter he felt two

---

[1] The trial court certified that the amount in controversy exceeded $5,000.

sudden bumps, throwing him successively against the steering wheel of his automobile. However, he did not lose control of his automobile, nor did he stop it. Approximately an hour later, when returning on this same road, but in a westward direction, he came upon police and other persons repairing a barricade over an excavation four feet by two feet, and placing lighted lanterns thereon. Appellant did not stop but continued to his destination. The next day he was informed that the excavation was dug by the Wilkinsburg Joint Penn Water Company,[2] for water line installation in a nearby home.

At trial, Keller produced two witnesses, in addition to himself.[3] William Keller, his brother, testified that he also was blinded by the headlights and was thrown against the dashboard. Significantly, neither appellant nor his brother saw any barricades or lanterns,— both were blinded. The only discrepancy in their testimony was as to the time the blinding by the headlights occurred. Appellant stated he was blinded for 70 to 80 feet before the jolts, whereas his brother stated the blinding and the jolting to be simultaneous. The other witness, Norman Robert Davis, was operating the automobile following appellant at a distance of about 20 to 25 feet. He testified substantially as follows: That several boards were thrown onto his car; that he stopped his vehicle in front of the hole and that he examined the area and noticed several boards and three extinguished lanterns, "lying out in the middle of the road." Davis did not examine these lanterns but pursued the appellant, unsuccessfully, for a very short distance.

---

[2] Hereinafter called Water Company.

[3] Although Keller's son was in the automobile, he was not called as a witness.

The Water Company, at time of trial, admitted ". . . that [on the day of the alleged accident] the . . . Water Company was in the process of installing a service line . . ., and in connection therewith had opened up a hole, and [further admitted] the maintenance, control and supervision of . . . [the] hole . . ." In addition, it produced two laborers, a foreman, and an inspector as witnesses. All of these, except the inspector, testified as to the nature of such an operation, upon their recollection being refreshed by use of the Water Company's time cards, containing notations as to the work progress on this particular excavation and the materials used. All stated that work began on Wednesday and continued until Friday noon; that they left shortly after pouring concrete within 2 to 2½ inches from the top, which portion was later to be filled with asphalt; that the excavation was filled as stated and the residue of the dirt hauled away in a truck when they left the job some time Friday afternoon; that the opening had been covered with boards; and that four 100-hour lanterns and two kerosene pots were lighted and placed in a diamond design around the hole, with the pots 20 to 25 feet in front and to the rear of the excavation.

Paul Wiseman, an inspector for the Water Company, testified that while working the 4:00 P.M. to 12:00 P.M. shift on October 11, 1953, he was notified by the Pitcairn police ". . . that the barricade had been struck by a car, that . . . [he] would have to *replace* the lanterns on the barricade." (Italics supplied). According to his testimony, Wiseman then proceeded to the scene and observed that the lanterns and "torches" were smashed and broken as well as the boards. He returned to the Water Company, obtained four lanterns and several boards, and reconstructed the barricade.

Upon considering the foregoing facts, the jury returned a verdict for the defendant Water Company. There is no reason for this Court to disturb the verdict.

Appellant's counsel contends that the defendant's evidence is of no probative value, and should not have been considered by the jury. In doing so the appellant has completely disregarded the jury's verdict which exonerated the Water Company of any negligence. There is no burden on the Water Company to disprove negligence. It is for the complaining party to establish negligence. We reiterate the statement in *Joseph v. Rochester Motor Company*, 380 Pa. 189, 110 A. 2d 214, that "The jury was warranted in finding that plaintiffs had not established negligence in defendant."

Nowhere in the record is there evidence regarding neglect of the excavation by the Water Company. The lower court's opinion points out that "the evidence is very slight, if any exists at all, to show that the condition of the barricade and lights was dangerous or negligently maintained . . . [and] the jury evidently felt that the plaintiff had not met the burden of proof to establish negligence . . ."

Appellant contends that *Walsh v. Pittsburgh*, 379 Pa. 229, 108 A. 2d 769, controls the instant case. This Court reviewed that record on appeal from the refusal *to enter judgment n.o.v.* There the plaintiff had a verdict. Here he does not. In the *Walsh* case, supra, the record discloses the existence of an intervening act of a third party, who threw away a wooden horse which had been placed in front of a 15 foot by 4 foot by 4 foot ditch. This intervening act had occurred some two hours prior to an automobile, in which Walsh was a passenger, running into the ditch. There was additional testimony that on a dark rainy night the flares were dark and a gas station attendant had noticed the

flares were out. None of the foregoing events appears in the instant case. Moreover, although of little solace to the appellant, this Court stated in the *Walsh* case, supra, at page 238, that " 'whether there was light sufficient to enable one exercising ordinary care to see where he was going, or warnings sufficient in the red lights at the curb to attract . . . attention,' were questions entirely for the jury . . ."; and we might add, whether the lights blinded the plaintiff.

We have said many times, negligence is not proven merely by the happening of an accident or proof of circumstances.

Judgment affirmed.